## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 1:12-cv-01590

MICHAEL BOATMAN, an individual,

> Plaintiff,

v.

UNITED STATES RACQUETBALL ASSOCIATION, d/b/a USA RACQUETBALL,
a Colorado Corporation,

> Defendant.

---

### PLAINTIFF MICHAEL BOATMAN'S SUMMARY JUDGMENT MOTION

---

**COMES NOW**, Plaintiff Michael Boatman, who moves for summary judgment on all of

his claims in the Complaint (*Docket # **1***) pursuant to Fed. R. Civ. P. 56.

This motion for summary judgment is as to the liability alone of Defendant United States

Racquetball Association, as there is a genuine issue as to the amount of damages.

### CLAIMS AND DEFENSES UPON WHICH JUDGMENT IS SOUGHT

**A.      Plaintiff is entitled to summary judgment on Claim 1: Copyright**

**Infringement**

> 1.      Burden of proof and elements:

To prove copyright infringement, a plaintiff must show two elements: (1) ownership of a

valid copyright, and (2) copying of constituent elements of the work that are original.

Denenberg v. LED Technologies, LLC, No. 11-cv-03155, at *3 (D. Colo. Sept. 28, 2012), citing

Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 361 (1991).

For a plaintiff to establish ownership of a valid copyright, a certificate of registration of a copyright "shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." Autoskill v. Nat'l Educ. Support Sys., Inc., 994 F.2d 1476, 1487 (10th Cir. 1993) (quoting 17 U.S.C. § 410(c)). The presumption of validity established with a certificate of registration includes the identification of the author. Id. at 1488. When a plaintiff presents a registration certificate, the plaintiff establishes a prima facie case that the copyright is valid and the burden of contesting the validity of the copyright then shifts to the party challenging it. Id.

The copying element of an infringement claim has two components. Blehm v. Jacobs et al., No. 1:09-cv-02865, at 7 (10th Cir., Dec. 27, 2012) (citing Country Kids 'N City Slicks, Inc. v. Sheen, 77 F.3d 1280, 1284 (10th Cir. 1996); and 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.01[B] (2010)). To establish actionable copying, a plaintiff must demonstrate: (1) that the defendant copied the plaintiff's work "as a factual matter," and (2) substantial similarity between the allegedly infringing work and the elements of the copyrighted work that are legally protected. Id.

"[T]he prima facie case for willful infringement requires a showing of specific intent to violate copyright law." Denenberg at *7 (citing BC Technical, Inc. v. Ensil Int'l Corp., 464 Fed. App'x 689, 696 (10th Cir. 2012)). "Where specific intent is an element of a crime it must be proven as an independent fact or clearly inferred from the evidence." Id. (quoting United States v. Sherman, 576 F. 2d 292, 297 (10th Cir. 1978) (finding willfulness where the prosecution produced evidence showing the defendants knew the audiotapes they were manufacturing contained copyrighted material). Willful infringement "is rarely provable by direct evidence, and most often can be proven only by inference from the evidence introduced." Sherman, 576

F.2d at 297-98.  Other Circuit courts have held that a plaintiff also may show willful infringement of a plaintiff's copyrights by showing that the defendant's actions were the result of "reckless disregard" for, or "willful blindness" to, the copyright holder's rights.  See, e.g., Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc., 658 F.3d 936, 944 (9th Cir. 2011); Island Software & Computer Serv., Inc. v. Microsoft Corp., 413 F.3d 257, 263 (2d Cir. 2005); and In re Aimster Copyright Litigation, 334 F.3d 643, 650 (7th Cir. 2003) (explaining that "[w]illful blindness is knowledge, in copyright law (where indeed it may be enough that the defendant should have known of the direct infringement)"); and Casella v. Morris, 820 F.2d 362, 365 (11th Cir. 1987) (explaining that "The standard of knowledge is objective: 'Know, or have reason to know'").  The Seventh Circuit has held that "evidence that notice had been accorded to the alleged infringer . . . is perhaps the most persuasive evidence of willfulness." Chi-Boy Music v. Charlie Club, Inc., 930 F.2d 1224, 1227 (7th Cir. 1991).

      2.  The undisputed facts show that Plaintiff Boatman is the owner of valid copyrights in the photographs at issue

      A.  Plaintiff Boatman has produced the four Certificates of Registration (VA 1-746-250, VA 1-746-257, VA 1-746-409, and VA 1-746-524) (Docket # **1-5**) for the twenty-eight photographs at issue as identified in paragraph 32 of the Complaint (Docket # **1**) (each individually a "Photograph," and collectively the "Boatman Photographs").

      B.  Each Certificate of Registration identifies Plaintiff Boatman as the author and copyright claimant of the Boatman Photographs.  Docket # **1-5**.

      C.  Defendant United States Racquetball Association ("Defendant USAR") has admitted that Plaintiff Boatman is the photographer who took the Boatman Photographs.  Def.'s Answers to Pl.'s First Set of Req. for Admis., attached hereto as Exhibit A, at Nos. 6, 16, 23, 28,

and 61.  Defendant USAR has not provided any evidence that Plaintiff Boatman is not the copyright owner of the Boatman Photographs.

        D.   Therefore, the undisputed facts show that Plaintiff Boatman is the owner of valid copyrights in the Boatman Photographs.

**The Separate Infringements of the Boatman Photographs**

Defendant USAR infringed the Boatman Photographs in five different manners, with varying undisputed facts.  Therefore, for ease of understanding what constitutes each of the infringements Plaintiff Boatman will address them separately below, with the infringing acts in section (a) and those facts establishing willfulness in section (b) of each numbered infringement.

**The Five Photographs:**

        3(a).   The undisputed facts show that Defendant USAR copied constituent elements of five of Plaintiff Boatman's photographs that are original

        A.   Plaintiff Boatman distributed a series of his photographs from the 2009 United States Open Racquetball Championships to Defendant USAR for its editorial use.  *Docket # 13* at ¶ 36; and *Affidavit of Michael Boatman*, attached hereto as Exhibit B at ¶ 8.

        B.   Defendant USAR distributed exact copies of five of Plaintiff Boatman's photographs as identified in Paragraph 10 of the Complaint (*Docket # 1*) (collectively the "Five Photographs")) to non-party United States Racquetball Foundation (the "Foundation") for the Foundation's commercial use, four of which can be seen below as used on the Foundation's website:

4

<u>Plaintiff Boatman's Photograhs</u>:     <u>Use by the Foundation on its website</u>:

 

 

 

 

*Hiser Deposition*, attached hereto as Exhibit C at 76:9-13, 99:21 – 100:1, and 374:23-375:5 ("It's

my belief that I gave photos to [Randy Stafford at the United States Racquetball Foundation],

yes."); *Kirk Deposition*, attached hereto as Exhibit D at 71:1-8; *Boatman Deposition*, attached

hereto as Exhibit E at 155:6-16; and *Declaration of Evan Andersen*, attached hereto as Exhibit F at Bates Nos. Boatman 0164, 0176.

C.   The fifth of the Five Photographs was used by the Foundation in a promotional presentation announcing the existence of the Foundation at the 2010 U.S. Open tournament.  Exhibit B at ¶ 9; and Exhibit E at 155:6-16.

D.   Plaintiff Boatman never authorized Defendant USAR to distribute the Five Photographs to third parties for any reason.  Exhibit C at 78:17-25, 101:9-11, 108:18-24 ("Q. Did you ever ask Mr. Boatman if you could send his photographs to USRF?  A.  No."), and 147:3-9; Exhibit E at 174:20-175:1.

E.   Only Plaintiff Boatman had the right to distribute the Five Photographs to another entity for commercial use.  *Docket #* **1-2**; Exhibit C at 119:22 – 120:1, and 121:2-8; Exhibit E at 176:4-177:5, 179:11-22.

F.   Therefore, the undisputed facts establish that Defendant USAR infringed Plaintiff Boatman's copyrights in the Five Photographs.

3(b).   The undisputed facts show that Defendant USAR's infringements of the Five Photographs were willful

A.   The Five Photographs as delivered by Plaintiff Boatman to Defendant USAR each included text appearing on the bottom left corner of the image, known as a "watermark," stating "© Mike Boatman 2009" as shown here:

(Each watermark shown at 100% zoom)



DSC_2967 (2).jpg                    DSC_3432.jpg



DSC_3624.jpg              DSC_4162.jpg              DSC_5132.jpg

Exhibit B at ¶¶ 4-5; Exhibit F at Bates Nos. Boatman 0532, 0536, 0540, 0544, and 0548.

B.   The Five Photographs as delivered by Plaintiff Boatman to Defendant USAR included metadata embedded in the "Copyright Notice" field stating "© Mike Boatman 2009." Exhibit B at ¶¶ 6-7; Exhibit F at Bates Nos. Boatman 0533-0535, 0537-0539, 0541-0543, and 0549-0551.

C.   Defendant USAR did not seek or obtain permission from anyone to distribute the Five Photographs to the Foundation.  Exhibit C at 108:13-24.

D.   On September 14, 2011, Plaintiff Boatman demanded that Defendant USAR cease and desist the use of the Boatman Photographs.  *Docket # **13*** at ¶ 32.

E.   As recently as December 24, 2012, Defendant USAR offered for sale to the public prints of one of the Five Photographs, as shown below:



Exhibit B at ¶ 10; Exhibit F at Bates Nos. Boatman 0590-0591.

   F. Therefore, the undisputed facts establish that Defendant USAR's copyright infringements of the Five Photographs were willful.

**The Beltran Photograph:**

   4(a). <u>The undisputed facts show that Defendant USAR copied constituent elements of one of Plaintiff Boatman's Photographs that are original</u>

   A. In an agreement between Plaintiff Boatman and Defendant USAR dated October 29, 2010 (*Docket* # **1-2**, the "USAR Agreement"), Plaintiff Boatman licensed a series of photographs to Defendant USAR for "one time publication in USA Racquetball Magazine," a magazine owned and operated by Defendant USAR ("Racquetball Magazine"). *Docket* # **1-2** at 1; Exhibit C at 148:15 – 149:1.

   B. One of Plaintiff Boatman's photographs licensed to Defendant USAR in the USAR Agreement and identified in Paragraph 15 of the Complaint (*Docket* # **1**) (hereafter the "Beltran Photograph"), was of Alvaro Beltran. *Docket* # **13** at ¶ 17; *Docket* # **1-2** at 2; Exhibit F at Bates No. 0519.

   C. Defendant USAR created a derivative of the Beltran Photograph and published that derivative work on the cover of its 2011 Rulebook, as shown below:




Exhibit A at ¶ 19; *Docket* # **1** at ¶ 16; Exhibit C at 358:13-25; and Exhibit F at Bates No. Boatman  0037.

D.   The cover of Defendant USAR's 2011 Rulebook was a use separate from that in Racquetball Magazine. Exhibit C at 153:21-25, and 156:6-157:12.

E.   Defendant USAR had no right pursuant to the USAR Agreement or otherwise to make a derivative work of the Beltran Photograph. *Docket* # **1-2** at 1; and Exhibit C at 127:22-128:1.

F.   Therefore, the undisputed facts establish that Defendant USAR infringed Plaintiff Boatman's copyrights in the Beltran Photograph.

4(b).   The undisputed facts show that Defendant USAR's infringement of the Beltran Photograph was willful

A.   The Beltran Photograph as delivered by Plaintiff Boatman to Defendant USAR included a watermark in the bottom left corner stating "© Mike Boatman 2010" as shown below at 100% zoom:



DMB_9851.jpg

Exhibit B at ¶¶ 4-5; and Exhibit F at Bates No. Boatman 0519.

B.   The Beltran Photograph as delivered by Plaintiff Boatman to Defendant USAR included metadata embedded in the "Copyright Notice" field stating "© Mike Boatman 2010."  Exhibit B at ¶¶ 6-7; and Exhibit F at Bates Nos. Boatman 0520-0522.

C.   The USAR Agreement gave notice to Defendant USAR that Plaintiff Boatman was the "legal copyright [owner]" of the photographs provided pursuant to the USAR Agreement, which included the Beltran Photograph.  *Docket* # **1-2** at 1.

D.   The USAR Agreement required that "[c]opyright notice must be clearly viewable in each image published, plus credit line to read 'Photographs provided by Mike Boatman.'" *Docket #* **1-2** at 1.

E.   With the USAR Agreement, Plaintiff Boatman provided to Defendant USAR a text file so that Defendant USAR could reapply the watermark stating "© Mike Boatman 2010" to Plaintiff Boatman's photographs should its designers crop the original watermark from any of the photographs. *Docket #* **1-2** at 1.

F.   The USAR Agreement expressly limited Defendant USAR to a one-time editorial use of the Beltran Photograph in Racquetball Magazine. *Docket #* **1-2** at 1; and Exhibit C at 148:15-149:1.

G.   Despite the actual notice and constructive knowledge of the license terms and copyright information, Defendant USAR used a derivative work of the Beltran Photograph on the cover of its 2011 Rulebook. Exhibit C at 358:13-25; Exhibit F at Bates No. 0037.

H.   Defendant USAR took no steps to verify that it had the authority to use the Beltran Photograph on the cover of the 2011 Rulebook.  Exhibit C at 154:25-155:5, 158:25-159:18 ("Q:  As a representative of USAR, did you or anyone else that you know of in the USAR office take any steps to make sure that USAR had the authority to use the photograph on the cover of the rulebook?  A:  No."), and 160:15-18.

I.   The USAR Agreement was agreed to and signed by Heather R. Fender, the "Special Assistant to the CEO" of Defendant USAR. *Docket #* **1-2** at 1; and Exhibit C at 128:2-8.

J.   Therefore, the undisputed facts establish that Defendant USAR's copyright infringement of the Beltran Photograph was willful.

10

**The Kane Photograph:**

     5(a).  <u>The undisputed facts show that Defendant USAR copied constituent elements of one of Plaintiff Boatman's photographs that are original</u>

     A.  In the USAR Agreement, Plaintiff Boatman licensed the photograph of Alvaro Beltran and Kane Waselenchuk identified in paragraph 17 of the Complaint (*Docket #* **1**) (the "Kane Photograph") to Defendant USAR for "one time publication in [Racquetball Magazine]." *Docket ##* **1-2** at 1 and 2, **13** at ¶ 17; Exhibit C at 163:5-164:6; and Exhibit F at Bates No. Boatman 0483.

     B.  The USAR Agreement stated that Defendant USAR was "restricted to editorial usage only.  NO commercial advertisement or for ads of any type, in print or electronic." *Docket #* **1-2** at 1.

     C.  Defendant USAR reproduced and displayed an exact copy of the Kane Photograph in an advertisement to promote its 2011 Regional Qualifier tournaments, as shown here:

 

Exhibit A at ¶ 26; *Docket #* **1**, ¶ 18; Exhibit C at 160:19-161:11; and Exhibit F at Bates No. Boatman 0066.

D.    Defendant USAR receives revenue from its Regional Qualifier tournaments. Exhibit C at 173:1-20.

E.    Defendant USAR also reproduced and displayed the 2011 Regional Qualifier tournament advertisement including the Kane Photograph in marketing materials available on its website to promote its membership program.  Exhibit C at 186:16-23, 199:18-200:1, 200:18-201:4, 202:3-7, and Exhibit F at Bates Nos. Boatman 0039-0067.

F.    Therefore, the undisputed facts establish that Defendant USAR infringed Plaintiff Boatman's copyrights in the Kane Photograph.

5(b).    The undisputed facts show that Defendant USAR's infringement of the Kane Photograph was willful

A.    The Kane Photograph as delivered to Defendant USAR by Plaintiff Boatman included a watermark in the bottom left corner stating "© Mike Boatman 2010" as shown here at 100% zoom:

© Mike Boatman 2010

DMB_1436.jpg

Exhibit B at ¶¶ 4-5; Exhibit F at Bates Nos. Boatman 0483.

B.    The Kane Photograph as delivered to Defendant USAR by Plaintiff Boatman included metadata embedded in the "Copyright Notice" field stating "© Mike Boatman 2010." Exhibit B at ¶¶ 6-7; Exhibit F at Bates Nos. Boatman 0484-0486.

C.    The USAR Agreement gave notice to Defendant USAR that Plaintiff Boatman was the "legal copyright [owner]" of the photographs provided pursuant to the USAR Agreement, which included the Kane Photograph.  *Docket* # **1-2** at 1.

D.    With the USAR Agreement, Plaintiff Boatman provided to Defendant USAR a text file so that Defendant USAR could reapply the watermark stating "© Mike Boatman 2010" to Plaintiff Boatman's photographs should its designers crop the original watermark from any of the photographs.  *Docket #* **1-2** at 1.

E.    The USAR Agreement expressly allowed for Defendant USAR's "one time publication in [Racquetball Magazine]," and restricted Defendant USAR to "editorial use only. NO commercial advertisement or for ads of any type, in print or electronic."  *Docket #* **1-2** at 1; and  Exhibit C at 148:15-149:1.

F.    Despite the actual notice and constructive knowledge of the license terms and copyright information, Defendant USAR used the Kane Photograph first in an advertisement and a second time in marketing materials. *Docket ##* **1**, ¶ 18, **1-2**;  Exhibit A at ¶ 26; and Exhibit C at 186:16-23, 202:3-7.

G.    The USAR Agreement was agreed to and signed by Heather R. Fender, the "Special Assistant to the CEO" of Defendant USAR.  *Docket #* **1-2** at 1; Exhibit C at 128:2-8.

H.    Therefore, the undisputed facts establish that Defendant's copyright infringement of the Kane Photograph was willful.

**The Eight Photographs:**

6(a).    The undisputed facts show that Defendant USAR copied constituent elements of eight of Plaintiff Boatman's photographs that are original

A.    Pursuant to the USAR Agreement, Plaintiff Boatman licensed eight photographs of racquetball players at the 2010 U.S. Open as identified in paragraph 19 of the Complaint (*Docket #* **1**) (collectively the "Eight Photographs") to Defendant USAR for "one

13

time publication in [Racquetball Magazine]."  *Docket #* **1-2**, **13** at ¶ 19, Exhibit F at Bates Nos. Boatman 0479, 0487, 0491, 0495, 0499, 0503, 0511, and 0515.

      B.   Defendant USAR reproduced and distributed exact copies of the Eight Photographs in the Fall 2010 edition of Racquetball Magazine.  Exhibit A at No. 32.

      C.   Defendant USAR also reproduced and distributed exact copies of the Eight Photographs in marketing materials made available on its website to promote its membership program.  Exhibit A at ¶ 45.  Exhibit C at 186:11-23, 202:3-7 ("Q.  [W]ould you say that this is advertising membership in USA Racquetball?  A.  Advertising membership, yeah."); Exhibit D at 158:9-159:7; and Exhibit F at Bates Nos. Boatman 0039-0067.

      D.   Defendant USAR had no right pursuant to the USAR Agreement or otherwise to make a derivative work of any of the Eight Photographs.  *Docket #* **1-2**, Exhibit C at 218:4-10, 219:7-22, Exhibit D at 165:18-166:8.

      E.   Defendant USAR created a derivative work of one of the Eight Photographs and reproduced it in an advertisement for its Instructor's Program in its Winter 2011 edition of Racquetball Magazine, as shown below:

 

Exhibit C at 213:18-25 ("Q:  Would you agree with me that this page is an advertisement for the Instructor's Program?  A:  Yes."); and Exhibit F at Bates No. Boatman 0068.

F.    Therefore, the undisputed facts establish that Defendant USAR infringed

Plaintiff Boatman's copyrights in the Eight Photographs.

6(b).    The undisputed facts show that Defendant USAR's infringements of the

Eight Photographs were willful

A.    The Eight Photographs as delivered by Plaintiff Boatman to Defendant

USAR included watermarks stating "© Mike Boatman 2010" as shown below at 100% zoom:



DMB_1231.jpg                DMB_1591.jpg                DMB_1752.jpg

DMB_1863.jpg                DMB_1955.jpg                DMB_8680.jpg

DMB_9559.jpg                DMB_9725.jpg

Exhibit B at ¶¶ 4-5; Exhibit F at Bates Nos. Boatman 0479, 0487, 0491, 0495, 0499, 0503, 0511,

and 0515.

B.    The Eight Photographs as delivered by Plaintiff Boatman to Defendant

USAR included metadata embedded in the "Copyright Notice" field stating "© Mike Boatman

2010."  Exhibit B at ¶¶ 6-7; Exhibit F at Bates Nos. Boatman 0480-0482, 0488-0490, 0492-0494,

0496-0498, 0500-0502, 0504-0506, 0512-0514, and 0516-0517.

C.    The USAR Agreement gave notice to Defendant USAR that Plaintiff

Boatman was the "legal copyright [owner]" of the photographs provided pursuant to the USAR

Agreement, which included the Beltran Photograph.  *Docket* # **1-2**.

D.    With the USAR Agreement, Plaintiff Boatman provided to Defendant USAR

a text file so that Defendant USAR could reapply the watermark stating "© Mike Boatman 2010"

to Plaintiff Boatman's photographs should its designers crop the original watermark from any of the photographs. *Docket* # **1-2**.

  E. The USAR Agreement required that "[c]opyright notice must be clearly viewable in each image published, plus credit line to read 'Photographs provided by Mike Boatman.'" *Docket* # **1-2**.

  F. The USAR Agreement expressly limited Defendant USAR to a "one time publication in [Racquetball Magazine]" and restricted Defendant USAR to "editorial usage only. NO commercial advertisement or for ads of any type, in print or electronic." *Docket* # **1-2**; and Exhibit C at 148:15-149:1.

  G. Despite the actual notice and constructive knowledge of the license terms and copyright information, Defendant USAR used the Eight Photographs a second time in a publication other than Racquetball Magazine, and one of the Eight Photographs a third time in a publication other than Racquetball Magazine.  Exhibit C at 186:16-23, 202:3-7; and Exhibit F at Bates Nos. Boatman 0039-0067, 0068.

  H. Defendant USAR did not verify that it had the authority to use the Eight Photographs in marketing materials for its membership program.  Exhibit C at 202:8-203:1.

  I. Defendant USAR did not verify that it had the authority to use one of the Eight Photographs to advertise its Instructor's Program.  Exhibit C at 215:1-16, 216:17-217:2, 217:20-218:3.

  J. The USAR Agreement was agreed to and signed by Heather R. Fender, the "Special Assistant to the CEO" of Defendant USAR. *Docket* # **1-2** at 1; Exhibit C at 128:2-8.

  K. Therefore, the undisputed facts establish that Defendant USAR's copyright infringements of the Eight Photographs were willful.

16

**The Thirteen Photographs:**

7(a).   <u>The undisputed facts show that Defendant USAR copied constituent elements of thirteen of Plaintiff Boatman's photographs that are original</u>

A.   In an agreement between Plaintiff Boatman and Defendant USAR dated January 7, 2011, (*Docket #* **1-3**, the "Stock Photography Agreement"), Plaintiff Boatman licensed a series of photographs to Defendant USAR for "unlimited print and electronic/web editorial use." *Docket #* **1-3** at 1.

B.   The Stock Photography Agreement conditioned Defendant USAR's use of the photographs on full payment of the license fee of $1,000, made in consecutive quarterly payments of $250. *Docket #* **1-3**. Exhibit C at 243:22-245:2, 252:16-22, 253:21-254:2, 256:21-24

C.   Plaintiff Boatman agreed to allow thirteen of the photographs from the Stock Photography Agreement (as identified in paragraph 26 of the Complaint (*Docket #* **1**, the "Thirteen Photographs") to be used in a brochure advertising sponsorship opportunities for one of its tournaments. *Docket #* **13** at ¶¶ 25-26; Exhibit A at ¶ 63; Exhibit C at 288:23-289:10, 290:4-8, 292:2-25; Exhibit E at 197:1-8, 204:5-20.

D.   Defendant USAR subsequently reproduced copies of the Thirteen Photographs in the brochure advertising sponsorship opportunities for one of its tournaments. *Docket ##* **1-4 13** at ¶ 29; Exhibit C at 297:3-298:10, and Exhibit F at Bates Nos. USAR 5732-5752.

E.   Defendant USAR acknowledged and understood that it could use the Thirteen Photographs only if it paid Plaintiff Boatman the license fee pursuant to the Stock Photography License.  Exhibit C at 292:13-25 ("Q:  [W]hat is your understanding as to what

17

would happen if USAR failed to make the full $1,000 payment under the stock photography agreement?  A:  Couldn't use the photographs.")

     F.   Defendant USAR made the first $250 payment on January 7, 2011.  *Docket # 13* at ¶ 31; Exhibit A at ¶¶ 54-55;  Exhibit E at 199:7-23.

     G.   Defendant USAR failed to send Plaintiff Boatman either the quarterly payment due April 7, 2011 or the quarterly payment due July 2011.  Exhibit C at 257:13-15, 269:13-270:15, Exhibit F at Bates No. USRA 8.

     H.   On September 14, 2011, Plaintiff Boatman demanded that Defendant USAR cease and desist the use of the Boatman Photographs.  *Docket # 13* at ¶ 32.

     I.   On September 21, 2011, Defendant USAR sent Plaintiff Boatman a check for $500, which Plaintiff Boatman has not cashed.  Exhibit A at ¶ 60; Exhibit D at 174:1-25; Exhibit E at 207:21-208:5; Exhibit F at Bates No. USRA 8.

     J.   To date, Defendant USAR has failed to pay Plaintiff Boatman the entire license fee due of $1,000.  Exhibit C at 257:13-15; Exhibit D at 178:18-179:3.

     K.   On August 28, 2012, Defendant USAR distributed the Thirteen Photographs to non-party ESPN, Inc., eleven months after Plaintiff Boatman demanded that Defendant USAR cease and desist the use of the Boatman Photographs and two months after Plaintiff Boatman filed this lawsuit. Exhibit A at ¶ 73.  Exhibit C at 299:14-300:7, 305:3-6; and Exhibit F at Bates Nos. 5732-5752.

     L.   Therefore, the undisputed facts establish that Defendant USAR infringed Plaintiff Boatman's copyrights in the Thirteen Photographs.

7(b).  <u>The undisputed facts show that Defendant USAR's infringements of the Thirteen Photographs were willful</u>

A.  Twelve of the Thirteen Photographs as delivered by Plaintiff Boatman to Defendant USAR included watermarks on the bottom left corner of each image stating either "© Mike Boatman 2008," "© Mike Boatman 2009," or "© Mike Boatman 2010" as shown here at 100% zoom:



| Court.jpg | DMB_9541.jpg | DSC_0542 |
| _DSC6053.jpg | 20080920-_DSC1579.jpg | DSC_9308.jpg |
| DSC_2555-5.jpg | DSC_9165.jpg | DSC_9476.jpg |
| DSC_9478.jpg | DSC_9610.jpg | DSC_9538.jpg |

Exhibit B at ¶¶ 4-5; Exhibit F at Bates Nos. Boatman 0467, 0471, 0475, 0507, 0523, 0528, 0552, 0557, 0562, 0566, 0571, and 0576.

B.  The Thirteen Photographs as delivered by Plaintiff Boatman to Defendant USAR included metadata embedded in the "Copyright Notice" field stating either "© Mike Boatman 2008," "© Mike Boatman 2009," or "© Mike Boatman 2010." Exhibit B at ¶¶ 6-7; Exhibit F at Bates Nos. Boatman 0464-0466, 0468-0470, 0472-0474, 0476-0478, 0508-0510, 0524-0527, 0529-0531, 0553-0556, 0558-0561, 0563-0565, 0567-0570, 0572-0575, and 0577-0580.

C.   The Stock Photography Agreement gave notice to Defendant USAR that "the copyrights to the Images remain the exclusive property of [Plaintiff Boatman]," and that "[t]he only rights for use of the Images granted to [Defendant USAR] are those specifically set forth in this License.  All other rights are reserved by [Plaintiff Boatman]."  *Docket # **1-3** at 1.*

D.   The Stock Photography Agreement limited Defendant USAR to editorial use of the Thirteen Photographs.  *Docket # **1-3** at 1.*  Exhibit C at 376:24-377:2.

E.   Despite the actual notice and constructive knowledge of the license terms and copyright information, Defendant USAR used the Thirteen Photographs despite knowing that it failed to pay Plaintiff Boatman the license fee pursuant to the Stock Photography Agreement.  Exhibit C at 292:2-25.

F.   On September 14, 2011, Plaintiff Boatman demanded that Defendant USAR cease and desist using the Boatman Photographs.  *Docket # **13** at ¶ 32.*

G.   On August 28, 2012, despite the actual notice and constructive knowledge of the license terms and copyright information, Defendant USAR distributed the Thirteen Photographs to non-party ESPN, Inc. for commercial purposes.  Exhibit C at 305:3-23; and Exhibit F at Bates Nos. 5732-5752.

H.   Only Plaintiff Boatman had the right to distribute the Thirteen Photographs to another entity for commercial use.  Exhibit C at 119:22-120:1; 1212-8, 306:7-24.

I.   Before sending the Thirteen Photographs to ESPN, Inc. Defendant USAR was aware that it did not have authority to distribute the Thirteen Photographs to ESPN, Inc., yet it took no action to obtain permission to do so.  Exhibit C at 294:12-21, 306:12-24 ("Q: Did you have authorization from Mr. Boatman to distribute his photographs to ESPN on August 28, 2012, for any reason whatsoever?  A:  No").

J.   Defendant USAR did not seek or obtain permission from anyone to distribute the Thirteen Photographs to ESPN, Inc.  Exhibit C at 306:20-24.

K.   The USAR Agreement was agreed to and signed by Jim Hiser, the CEO of Defendant USAR.  *Docket # 1-3* at 2; Exhibit C at 251:16-252:6.

L.   Therefore, the undisputed facts establish that Defendant's copyright infringements of the Thirteen Photographs were willful.

**B.   Plaintiff is entitled to summary judgment on Claim 2: Violations of the Digital Millennium Copyright Act**

1.   <u>Burden of proof and elements</u>:

To prove a claim of section 1202(b) of the Digital Millennium Copyright Act, a plaintiff must show three elements: that the defendant (i) without authority of the copyright owner or the law (ii) intentionally removed or altered any copyright management information (iii) knowing or having reasonable grounds to know that it will induce, enable, facilitate, or conceal an infringement of the federal copyright laws.  <u>Gordon v. Nextel Commc'ns and Mullen Advert.</u>, 345 F.3d 922, 927 (6th Cir. 2003); 17 U.S.C. § 1202(b).

2.   <u>The undisputed facts show that Defendant USAR had no authority to remove Plaintiff Boatman's copyright management information from the Photographs</u>

A.   The two photographs at issue for this claim were included in the set of photographs provided by Plaintiff Boatman to Defendant USAR pursuant to the USAR Agreement.  *Docket # 1-2* at 1 and 2; Exhibit F at Bates Nos. Boatman 0479 (the "Article Photograph") and 0515 (the "Instructor's Program Photograph") (together, the "DMCA Photographs").

B.    The DMCA Photographs, as provided by Plaintiff Boatman to Defendant USAR, each included watermarks in the bottom-left corner stating "© Mike Boatman 2010" as shown here at 100% zoom:



DMB_1231.jpg          DMB_9725.jpg

Exhibit B at ¶¶ 4-5; Exhibit F at Bates Nos. Boatman 0479 and 0515.

C.    As these watermarks are made up of "[t]he name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright" and were conveyed by Plaintiff Boatman in connection with copies of his photographs, the watermarks constitute copyright management information as defined in 17 U.S.C. § 1202(c)(7).  17 U.S.C. § 104(b).

D.    The USAR Agreement requires that "[c]opyright notice must be clearly viewable in each image published," conditioning use of the photographs on the inclusion of Plaintiff Boatman's copyright notice on each photograph when used by Defendant USAR. *Docket* # **1-2** at 1.

E.    With the USAR Agreement, Plaintiff Boatman provided to Defendant USAR a text file so that Defendant USAR could reapply the watermark stating "© Mike Boatman 2010" to Plaintiff Boatman's photographs should Defendant USAR's designers crop the original watermark from any of the photographs.  *Docket* # **1-2** at 1.

F.    No law allowed Defendant USAR to remove Plaintiff Boatman's copyright management information from his photographs.

G.   Therefore, the undisputed facts establish that Defendant USAR had no authority to remove Plaintiff Boatman's copyright management information from the DMCA Photographs.

3.   The undisputed facts show that Defendant USAR intentionally removed copyright management information from the DMCA Photographs

A.   The Article Photograph as reproduced, displayed, and distributed by Defendant USAR in the Fall 2010 edition of Racquetball Magazine was cropped by Defendant USAR along its bottom edge, removing the watermark as initially placed by Plaintiff Boatman, as shown below at 100% zoom:



Exhibit F at Bates Nos. Boatman 0052, 0479.

B.   The Instructor's Program Photograph was modified by Defendant USAR so that the image was blurred and so that Plaintiff Boatman's watermark was no longer visible, as shown below:

clinics, as do our clinicians.  In addition to our Master Instructors, we also have a list of
approved professional clinicians.
• All clinics are USAR-sanctioned, and instructors have passed our national instructor test.

WINTER 2011 I USA RACQUETBALL  I **29**

Exhibit F at Bates Nos. Boatman 0068, 0515.

C.   Therefore, the undisputed facts establish that Defendant USAR effectively
and intentionally removed Plaintiff Boatman's copyright management information from the
DMCA Photographs.

4.   <u>The undisputed facts show that Defendant USAR knew or had reasonable
grounds to know that the removal of Plaintiff Boatman's copyright management information
would induce, enable, facilitate, or conceal an infringement of the federal copyright laws</u>

A.   The USAR Agreement requires that "[c]opyright notice must be clearly
viewable in each image published," conditioning use of the photographs on the inclusion of
Plaintiff Boatman's copyright notice on each photograph when used by Defendant USAR.
*Docket* # **1-2** at 1.

B.   The USAR Agreement further requires that Defendant USAR include a
"credit line to read "Photographs provided by [Plaintiff Boatman]." *Docket* # **1-2** at 1.

C.   With the USAR Agreement, Plaintiff Boatman provided to Defendant USAR
a text file so that Defendant USAR could reapply the watermark stating "© Mike Boatman 2010"
to Plaintiff Boatman's photographs should Defendant USAR's designers crop the original
watermark from any of the photographs.  *Docket* # **1-2** at 1.

D.   The USAR Agreement was agreed to and signed by Heather R. Fender, the
"Special Assistant to the CEO" of Defendant USAR.  *Docket* # **1-2** at 1; Exhibit C at 128:2-8.

E.    Therefore, the undisputed facts show that Defendant USAR knew or had reasonable grounds to know that the removal of Plaintiff Boatman's copyright management information would induce, enable, facilitate, or conceal an infringement of the federal copyright laws.

## **CONCLUSION**

The undisputed evidence indicates that the Plaintiff Boatman has proven his claims of willful copyright infringements and violations of the Digital Millennium Copyright Act by Defendant USAR, entitling him to summary judgment on those claims.

This 7th day of March, 2013.

/s/ Evan A. Andersen
_____
Evan A. Andersen
LAW OFFICE OF CAROLYN E. WRIGHT, LLC
evan@photoattorney.com
P.O. Box 250208
Atlanta, GA 30325
Street Address:
1984 Howell Mill Road #250208
Atlanta, GA 30325
(404) 496-6606 (telephone)
(775) 588-5961 (facsimile)

Carolyn E. Wright
LAW OFFICE OF CAROLYN E. WRIGHT, LLC
carolyn@photoattorney.com
P.O. Box 430
Glenbrook, NV 89413
(775) 589-2229 (telephone)
(775) 588-5961 (facsimile)

*Attorneys for Plaintiff Michael Boatman*

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Fed. R. Civ. P. 5, I hereby certify that on the 7th of March, 2013, I

caused to be served via CM/ECF a true and correct copy of PLAINTIFF MICHAEL

BOATMAN'S SUMMARY JUDGMENT MOTION on the following attorneys of record:

Jason M. Kuzniar
Lauren Kim
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
55 West Monroe Street, Suite 3800
Chicago, IL 60603
Jason.Kuzniar@wilsonelser.com
Lauren.Kim@wilsonelser.com

Jason D. Melichar
Scott D. Sweeney
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
1512 Larimer Street, Suite 550
Denver, CO 80202
Jason.Melichar@wilsonelser.com
Scott.Sweeney@wilsonelser.com

This 7th day of March, 2013.


/s/ Evan A. Andersen
_____

Evan A. Andersen