**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:12-cv-01590-MSK-CBS

MICHAEL BOATMAN, an individual,

    Plaintiff,

v.

UNITED STATES RACQUETBALL ASSOCIATION, d/b/a USA RACQUETBALL, a Colorado Corporation,

    Defendant.

---

**DEFENDANT UNITED STATES RACQUETBALL ASOCIATION'S
REDACTED MOTION FOR SUMMARY JUDGMENT**

---

Defendant United States Racquetball Association ("USRA"), by its undersigned attorneys, pursuant to Fed. R. Civ. P. 56, moves this Honorable Court for Summary Judgment on all of the claims in Plaintiff's Complaint, and in support state as follows:

**INTRODUCTION**

USRA is a non-profit corporation and its goal is to promote racquetball within the United States at all levels. Deposition of James Hiser, attached hereto as Exhibit A, at 193. USRA is the national governing body of racquetball under the auspices of the United States Olympic Committee. Deposition of Cheryl Kirk, attached hereto as Exhibit B, at 121–22. USRA owns and sanctions the U.S. Open Racquetball Championships, one of USRA's six major racquetball events ("Open"). Affidavit of Cheryl Kirk, attached hereto as Exhibit C, at ¶ 5. Doug Ganim, through his business Ganim Enterprises, manages and operates the Open for USRA. Deposition of J. Douglas Ganim, attached hereto as Exhibit D, at 18.

Plaintiff Michael Boatman is a professional photographer, who began taking photographs at the Open in 1996. Ex. D at 33. Since that time, Boatman and Ganim had an oral agreement for the use of Boatman's photography at the Open (*id.* at 22), which agreement was later reduced to writing in July 2009. Deposition of Charles Meredith, attached hereto as Exhibit E, at Ex. 1; Ex. D at 26. Their agreement was that Boatman's Open photos were licensed to Ganim for any Open-related purpose and for Ganim's distribution to Open sponsors for their unrestricted use, including USRA as the owner and presenting sponsor of the Open. Ex. D at 22, 25, 33. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Declaration of Lauren Kim, attached hereto as Exhibit F, at F2, F3. In October 2010 and January 2011, Boatman executed licensing agreements in favor of USRA for its use of Boatman's photos. Ex. A at Ex. 16; Ex. E at Ex. 12.

Despite these oral agreements and license agreements, Boatman now alleges that USRA violated his copyrights (Count I) and the Digital Millenium Copyright Act (Count II) by its use of certain of Boatman's photographs. In particular, Boatman alleges that USRA is liable for: (1) using his photographs in a free electronic preview of its Fall 2010 edition of Racquetball Magazine, which is published by USRA ("Preview"); (2) using one of his photographs in a regional qualifiers calendar ("Calendar") contained in the same Fall 2010 edition of Racquetball Magazine; (3) using one of his photographs on the cover of the USRA 2011 Rulebook ("Rulebook"), which also was contained in the same Fall 2010 edition of Racquetball Magazine; (4) providing five of his photographs to the United States Racquetball Foundation ("USRF"), which photographs appeared on the USRF's website and in a PowerPoint presentation by one of its representatives; (5) using his photographs in a USRA sponsorship package for the U.S. Nationals ("Sponsorship Package"); (6) using those same photos in a newsletter article regarding

the U.S. Nationals ("Newsletter") and (7) using his photographs in a one-page instructor's program overview ("Instructor's Program"), which was included in the Spring 2011 edition of Racquetball Magazine.

USRA is entitled to summary judgment on each of Boatman's claims because he cannot prove the required elements of either a copyright infringement claim or DMCA violation. Moreover, USRA is also entitled to summary judgment based on Boatman's waiver of his claims.

## CLAIMS AND DEFENSES UPON WHICH JUDGMENT IS SOUGHT

### A. Defendant is entitled to Summary Judgment on Count I: Copyright Infringement

#### 1. Burden of proof and elements

Plaintiff's claim for copyright infringement under 17 U.S.C. § 101 *et seq.*, requires Plaintiff to establish (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). The plaintiff bears the burden of proof on both elements. *Palladium Music, Inc. v. EatSleepMusic, Inc.*, 398 F.3d 1193, 1196 (10th Cir. 2005). Moreover, USRA's use of Boatman's photographs are governed by licenses from Boatman to either USRA directly or to Ganim. Because the scope of such licenses is at issue, "the copyright owner bears the burden of proving that the defendant's copying was unauthorized." *Bourne v. Walt Disney Co.*, 68 F.3d 621, 631 (2d Cir. 1995); *Wood v. Houghton Mifflin Harcourt Publ'g Co.*, 589 F. Supp. 2d 1230, 1239 (D. Colo. 2008) (to prove his copyright claim, the plaintiff was required to "further establish that those licenses were limited in scope, and that [the defendant's use] exceeded that scope.") (citations omitted).

### 2. Elements that cannot be proven by the Plaintiff

Element 2: USRA contends that Plaintiff cannot demonstrate a triable issue of fact as to whether USRA copied the constituent elements of Plaintiff's works that are original.

Element 3: USRA contends that Plaintiff cannot establish that USRA's use of his photographs exceeded the scope of the licenses he granted.

## B. Defendant is entitled to Summary Judgment that it was an innocent infringer, if it is was an infringer, on Count I: Copyright Infringement

### 1. Burden of proof and elements

Upon showing copyright infringement, the copyright owner is entitled to recover the actual damages suffered as a result of infringement. 17 U.S.C. § 504(b). A plaintiff can seek statutory damages in lieu of actual damages. 17 U.S.C. § 504(a). Generally, a plaintiff can be awarded "not less than $750 or more than $30,000" statutory damages. *Id*. at § 504(c). There are two exceptions: (1) if the infringement was committed willfully the plaintiff may be awarded up to $150,000 per infringement; and (2) if the infringement was innocent, meaning the infringer was not aware of and had no reason to believe that his or her acts constituted an infringement of copyright, the court may reduce the award to not less than $200 per infringement. *Id*. The copyright holder has the burden of proving that infringement was committed willfully; the infringer has the burden of proving the infringement was innocent. *Id*.

### 2. Elements that cannot be proven by the Plaintiff

Element 1: USRA contends that Plaintiff cannot demonstrate that he has suffered any actual damages.

Element 2: USRA further contends that Plaintiff cannot demonstrate USRA had specific intent to violate copyright law and, therefore, Plaintiff cannot establish willful infringement.

### 3.     Elements that can be proven by Defendant

Element 1:   USRA was not aware of, and had no reason to believe, its acts allegedly constituted copyright infringement.

A.   To the extent that there was any infringement of Boatman's copyrights, which USRA denies, any such infringement was innocent. Innocent infringement requires USRA to prove that it was not aware of and had no reason to believe that its acts constituted copyright infringement. *Denenberg v. LED Techs., LLC*, 2012 U.S. Dist. LEXIS 140513, 11 (D. Colo. Sept. 28, 2012).

B.   Plaintiff Michael Boatman began taking photos at the first U.S. Open Racquetball Championships in 1996. Ex. D at 17, 20.

C.   USRA is the owner and presenting sponsor of the Open. *Id.* at 33.

D.   Doug Ganim, the tournament operator of the Open (*id.* at 18), and Boatman entered into an oral agreement when Boatman first started taking photos at the Open regarding the use of those photos. *Id.* at 20.

E.   Boatman and Ganim's agreement was that Boatman's photos were licensed to Ganim for any Open-related purpose and for Ganim's distribution to the Open sponsors for their unrestricted use. *Id.* at 22, 25.

F.   The agreement contained no limitations on usage by the Open sponsors and the photos could be used commercially. *Id.* at 24.

G.   Boatman understood this was their agreement. *Id.* at 26.

H.   In fact, ███████████████████████████████████████████████████
███████████████████████████████████████████ Ex. F at F4.

I.   Boatman knew that USRA was at least a sponsor of the Open. Ex. D at 57.

J.        The prior oral agreement between Ganim and Boatman for the Open was never terminated and still governs all photos taken by Boatman at any Open from 1996 to 2010. *Id.* at 41–42, 52.

K.        On July 17, 2009, Boatman and Ganim reduced to writing their longstanding oral agreement, as follows:

> Photography agreement, this is my understanding of our agreement we made so many years ago. . . .
>
> US Open photography Agreement:
> Same as always images are for the uses of Ganim Enterprises, US Open, and any editorial use per Doug Ganim without restrictions.

Ex. E at Ex. 1.

L.        Ganim testified that the term "images are for the uses of Ganim Enterprises, US Open" allow Ganim to distribute the photos to Open sponsors as distribution to Open sponsors is both a Ganim Enterprises function and Open function.  He specifically discussed this with Boatman.  Ex. D at 26.

M.        Ganim testified that Boatman and Ganim had an oral agreement to abide by the same terms for the 2010 Open as they had agreed upon for 2009 and all the prior years. *Id.* at 108–10.

N.        Ganim testified that USRA owns the Open and could use Boatman's photos to promote USRA, including commercially. *Id.* at 37.

O.        If USRA asked Ganim if it could use Boatman's photos for commercial purposes, Ganim would approve such use. *Id.*

P.        Ganim explained to then-Executive Director of USRA, James Hiser, that Ganim's agreement with Boatman allowed USRA the right to use the Boatman photos for USRA's own purposes. *Id.* at 74, 79.

6

Q. On January 7, 2011, a stock photography license was entered into by Boatman and Jim Hiser, on behalf of USRA ("Stock License"). Ex. E at Ex. 12. The Stock License allowed for "unlimited print and electronic/web editorial use for USAR" for Boatman's racquetball photos from 2003 to 2009. *Id.*

R. Jim Hiser attempted to clarify why the 2010 racquetball photos were not also included in the Stock License and emailed Boatman stating "Also Mike the contract goes to 2009. I was informed the reason for this is because Doug has the complete rights to the 21010 [sic] photos and thus you could not include in this contract. Is this correct?" Ex. A at Ex. 22. Boatman testified ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. G at 223.

S. As indicated to it by Ganim, USRA believed it owned the photos taken by Boatman at the Open, as the USRA owns the U.S. Open. Ex. A at 79–80, Ex. 13.

T. Hiser testified that he believed that USRA had the right to use Boatman's photographs in any way USRA wanted to use the photographs. *Id.* at 121.

U. Hiser testified that Ganim told him that USRA had the right to use the photos in any way it wanted, including giving the photos to USRF for its use. *Id.* at 91. Any infringement by USRA in using any of Boatman's photos was innocent as it believed it was authorized to use Boatman's photos in any way, including commercially.

V. For example, Hiser believed USRA was allowed to use the Rulebook photo as USRA believed it had the rights to use the Open photographs in any way. *Id.* at 154. The Rulebook was not independently printed but contained within the Magazine. Affidavit of Melody Weiss, attached hereto as Exhibit H, at ¶ 5–6.

W.      At the time Boatman's photo was used in the Instructor's Program, Hiser was not aware that the failure to include Boatman's watermark on his photographs would constitute copyright infringement. Ex. A at 220.

X.      Additionally, to the extent that there was any infringement of Boatman's photos (which USRA disputes), such infringement was innocent for the reasons outlined below regarding Boatman's waiver. Boatman specifically waived the terms of the License Agreement when he allowed and approved the use of his photos for commercial purposes and after only one payment had been made under the License Agreement. Based on this waiver, any possible infringement by the Sponsorship Package or the Newsletter was an innocent infringement.

### C.      **Defendant is entitled to Summary Judgment on Count II: Digital Millennium Copyright Act**

#### 1.      **Burden of proof and elements**

A violation of the Digital Millennium Copyright Act occurs when a person (i) without authority of the copyright owner or the law (ii) intentionally removes or alters any copyright management information (iii) knowing or having reasonable grounds to know that it will induce, enable, facilitate, or conceal an infringement of the federal copyright laws. *Stockart.com, LLC v. Engle*, 2011 U.S. Dist. LEXIS 20470, 26–28 (D. Colo. Feb. 18, 2011)

#### 2.      **Elements that cannot be proven by the Plaintiff**

Element 1:      USRA contends that Plaintiff cannot prove that USRA without authority of the copyright owner or the law intentionally removed or altered any copyright management information.

Element 2:      USRA contends that Plaintiff cannot prove that USRA intentionally removed or altered any copyright management information.

Element 3: USRA contends that Plaintiff cannot prove that USRA knew or had reasonable grounds to know that any removal or alteration of any copyright management information would induce, enable, facilitate, or conceal an infringement of the federal copyright laws.

**D. Defendant is entitled to Summary Judgment on its affirmative defense of waiver on Count I: Copyright Infringement.**

**1. Burden of proof and elements:**

"Waiver is the intentional relinquishment or abandonment of a known right." *Jewkes v. Shackleton*, 2012 U.S. Dist. LEXIS 154735 (D. Colo. Oct. 29, 2012) *(citing United States v. Olano*, 507 U.S. 725 (1993)). As an affirmative defense, a defendant has the burden to demonstrate waiver. *Virostek v. IndyMac Mortg. Servs.*, 2012 U.S. Dist. LEXIS 111055, 15–16 (D. Colo. May 29, 2012) (citations omitted).

**2. The undisputed facts show that Plaintiff waived any claims of copyright infringement**

A. USRA has been using photos from the U.S. Open since the U.S. Open's inception in 1996 without issue. Ex. A at 79, 83.

[redacted]

C. Boatman historically allowed USRA to use his photos. Ex. E at 44.

D. On April 29, 2009, Cheryl Kirk, then the President of the Board of Directors for USRA, emailed Boatman [redacted] Ex. C at ¶ 6, Ex. C1.

E.      On April 30, 2009, Boatman ██████████████████████████████████████

████████████████████████████████████████████████████████████  Ex. C at ¶

7, Ex. C2.

F.      When Boatman ████████████████████████████████████████████████

████████████████████████████████████████████████  Ex. F at F5.

G.      Kirk used two of Boatman's photographs on the cover of a pamphlet titled

"Racquetball Rules & Play" and two of Mr. Boatman's photographs on the cover of another

pamphlet titled "Learn More About Racquetball – Learn to Play!"  Ex. C at ¶ 9, Ex. C4.

H.      On  May  5,  2009,  ██████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████████████████████████  Ex. C at ¶ 10, Ex. C5.

I.      In response, Boatman told her ████████████████████████████████████

████████████████████████████████████████████████████████████████  Ex. C at ¶

11, Ex. C6.

J.      USRA used one of Boatman's photographs for almost identical use in using one

of his photos for the cover of the 2011 Rulebook.  ████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████  waives any copyright infringement claims

he has regarding the photo on the 2011 Rulebook.

K.      Boatman stated in an email dated October 12, 2010 ████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████ Ex. F at F6.

L.  On December 16, 2010, Boatman stated in an email to Eddie Meredith that ███

███████████████████████████████████████████████

███████████████████████████ Ex. F at F7.

M.  Based on this entire prior history and Boatman's remarks regarding free usage of his photos, any claims Boatman has regarding any potential infringement has been waived by his past conduct and representations to USRA.

N.  Additionally, on January 7, 2011, a stock photography license was entered into by Boatman and Jim Hiser, on behalf of USRA ("Stock License"). Ex. E at Ex. 12. The Stock License allowed for "unlimited print and electronic/web editorial use for USAR" for Boatman's racquetball photos from 2003 to 2009. *Id.*

O.  Jim Hiser attempted to clarify why the 2010 racquetball photos were not also included in the Stock License and emailed Boatman stating "Also Mike the contract goes to 2009. I was informed the reason for this is because Doug [Ganim] has the complete rights to the 21010 [sic] photos and thus you could not include in this contract. Is this correct?" Ex. A at Ex. 22. ████████████████████████████████████████ Ex. G at 223.

P.  Boatman waived compliance with the terms of the Stock License when he approved the use of his photos for the Sponsorship Package. On January 7, 2011, ████████
████████████████████████████████████ Ex. F at F8.

Q.  The Sponsorship Package was clearly a commercial product as it sold sponsorships to the 2011 U.S. Nationals Racquetball Championships ranging from $10,000 to $550. Ex. E at Ex. 8.

11

      R.      Mary Meredith ███████████████████████████ Ex. F at F9.

      S.      In response, Boatman ████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████ *Id.* (emphasis in original). Boatman thus waived the terms of the Stock License when he granted USRA the rights to use his photos for the Sponsorship Package and approved the usage despite the fact that it constituted a commercial use of his photos and only $250 had been paid under the Stock License. "A waiver occurs when a party to a contract is entitled to assert a particular right, knows the right to exist, and intentionally abandons that right." *Baroness Small Estates, Inc. v. Round Hill Cellars*, 2011 U.S. Dist. LEXIS 142740, 18 (D. Colo. Dec. 12, 2011) (citing *Glover v. Innis*, 252 P.3d 1204, 1208 (Colo. App. 2011)). Boatman has waived any claims for copyright infringement relating to the Sponsorship Package and the Newsletter.

      T.      ████████████████████████████████████

████████████████████████████████████████████████████████

███:

████████████████████████████████████

Ex. F at F10. In response, Boatman stated ████████████████

████████████████████████████████████████████████████████

██████████████████████████████ Boatman waived any potential claims for copyright infringement to the extent they relate to his photo credit.

12

### D. Defendant is entitled to Summary Judgment on its affirmative defense of waiver on Count II: Digital Millennium Copyright Act

#### 1. Burden of proof and elements:

"Waiver is the intentional relinquishment or abandonment of a known right." *Jewkes v. Shackleton*, 2012 U.S. Dist. LEXIS 154735 (D. Colo. Oct. 29, 2012) *(citing United States v. Olano*, 507 U.S. 725 (1993)). As an affirmative defense, a defendant has the burden to demonstrate waiver. *Virostek v. IndyMac Mortg. Servs.*, 2012 U.S. Dist. LEXIS 111055, 15–16 (D. Colo. May 29, 2012) (citations omitted).

#### 2. The undisputed facts show that Plaintiff waived any claims of violation of the Digital Millennium Copyright Act

A. 

Ex. F at F10. In response, Boatman stated:

B. "A waiver occurs when a party to a contract is entitled to assert a particular right, knows the right to exist, and intentionally abandons that right." *Baroness Small Estates, Inc. v. Round Hill Cellars*, 2011 U.S. Dist. LEXIS 142740, 18 (D. Colo. Dec. 12, 2011) (citing *Glover v. Innis*, 252 P.3d 1204, 1208 (Colo. App. 2011)). Boatman has waived all claims he has regarding the alteration or removal of his copyright management information.

## CONCLUSION

As Plaintiff's evidence is insufficient to establish all of the elements of his claims, Defendant United States Racquetball Association is entitled to summary judgment on Count I and Count II of Plaintiff's Complaint. In addition, the undisputed evidence indicates that the Defendant has proven its affirmative defense of waiver and is entitled to summary judgment on Plaintiff's claims for that reason as well.

Dated: March 7, 2013

Respectfully submitted,

**UNITED STATES RACQUETBALL ASSOCIATION, Defendant**

By: ____/s/ Lauren M. Kim_____
      One of its attorneys

Scott D. Sweeney
WILSON ELSER MOSKOWITZ
   EDELMAN & DICKER LLP
1512 Larimer St., Suite 550
Denver, CO 80202
(303) 572-5300

Jason M. Kuzniar
Lauren M. Kim
WILSON, ELSER, MOSKOWITZ,
   EDELMAN & DICKER LLP
55 W. Monroe St., Suite 3800
Chicago, IL 60603
(312) 704-0550

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that on **March 7, 2013** this document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Evan A. Andersen
Law Office of Carolyn E. Wright, LLC
1984 Howell Mill Road #250208
Atlanta, GA 30325

Carolyn E. Wright
Law Office of Carolyn E. Wright, LLC
P.O. Box 430
Glenbrook, NV 89413
*Attorneys for Plaintiff*

                                              /s/ Lauren M. Kim

1507778.1