IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 12-cv-01590-MSK-CBS

MICHAEL BOATMAN, an individual,

      Plaintiff,

v.

UNITED STATES RACQUETBALL ASSOCIATION, d/b/a USA Racquetball,

      Defendant.

---

OPINION AND ORDER DENYING
MOTIONS FOR SUMMARY JUDGMENT

---

**THIS MATTER** comes before the Court on cross-motions for summary judgment: Mr.

Boatman's Motion for Summary Judgment on All Claims (**#26**), the Defendant United States

Racquetball Association's Response (**#30, 31**), and Mr. Boatman's Reply (**#34**); and the

Defendant's Motion for Summary Judgment (**#27, 28**), Mr. Boatman's Response (**#29**), and the

Defendant's Reply (**#32, 33**).  Also pending before the Court is the Defendant's Motion for

Leave to Restrict Document (**#35**), to which no response was filed.

## I.  Facts

Having reviewed the record and the submissions of the parties, the Court finds the

undisputed facts relevant to the motion to be as follows.

Plaintiff Michael Boatman is a professional photographer and racquetball enthusiast.  The

Defendant United States Racquetball Association (USRA) is a non-profit corporation that

promotes racquetball.  The Defendant owns six major sporting events, including the U.S. Open

Racquetball Championships.  Although the Defendant owns the U.S. Open, it hires a third-party

to manage the operation and running of the tournament.  During the times relevant to this action, Ganim Enterprises was the operator of the U.S. Open.

Mr. Boatman attended the U.S. Open tournament from 1996 through 2010 and took several photographs during the events.  Although Mr. Boatman contends that he never gave up copyright ownership to his photographs, he admits that, over the years, he gave permission to various individuals to use his photographs for certain purposes.  Pertinent to this action are three license agreements in particular: (1) an oral agreement between Mr. Boatman and Doug Gamin, the owner of Ganim Enterprises, which was reduced to writing on July 17, 2009 ("the U.S. Open Agreement"); (2) a license granted by Mr. Boatman to the Defendant executed on October 29, 2010, ("the USAR License"), and (3) an agreement between Mr. Boatman and the Defendant executed on January 7, 2011, ("the Stock Photography License").

*a. The U.S. Open Agreement*

Since 1996, Mr. Boatman had a standing oral agreement with Doug Ganim, owner of Gamin Enterprises, that his photographs of the tournament could be used by Mr. Ganim for editorial purposes related to the U.S. Open.  In exchange, Mr. Boatman received perks at the tournament, such as free entry and food and beverages.  Pursuant to this agreement, Mr. Ganim would use Mr. Boatman's photographs on materials related to the U.S. Open.  He would also provide photographs to the Defendant and authorize it to use the photographs for certain purposes.

In July 2009, through a series of email exchanges, Mr. Boatman and Mr. Gamin reduced to writing the oral "agreement [they] made so many years ago."  An email from Mr. Boatman states, "US Open [P]hotography Agreement:  Same as always images are for the uses of Ganim Enterprises, US Open, and any editorial use per Doug Ganim without restrictions.  Photographer,

Mike Boatman maintains copyright exclusive ownership and has the right to sell or publish images per his discretion." Mr. Ganim responded that the terms outlined were acceptable.

b. *The USAR License*[1]

On October 29, 2010, Mr. Boatman wrote to USAR, supplying 58 of his photographs and implicitly licensing USAR to make certain uses of them, subject to the following terms: (i) "copyright notice must be clearly visible in each image published," along with a specific attribution to Mr. Boatman; (ii) USAR was to make "editorial usage only" of the images; (iii) the use of the photographs with "commercial advertisement or [use] for ads of any type" was expressly prohibited; (iv) the images "may not be distributed, sold, or gifted to any third party"; and (v) the release "is for one-time publication in USA Racquetball Magazine."

c. *The Stock Photography License*

On January 7, 2011, Mr. Boatman and the Defendant entered into an agreement by which Mr. Boatman gave the Defendant permission, beginning on January 6, 2011 and continuing for three years, to make "unlimited print and electronic/web editorial use" of "action photos of racquetball from 2003 to 2009." The agreement provided for payment of a $1,000 fee in exchange for this license. The license required that USAR include a copyright notice identifying him with each published use of the images, and provided that USAR was not permitted to assign or transfer its rights under the license.[2]

---

[1]    USAR argues that this "agreement" is "null and void as it is unsupported by consideration" and was entered into by an unauthorized representative of USAR. This Court understands the document to be a conditional license granted by Mr. Boatman to USAR, not a bilateral agreement by which USAR assumed certain performance obligations towards Mr. Boatman in exchange for the benefits of that license. Thus, questions of consideration given by USAR and authorization of the representative who signed the document on USAR's behalf are largely irrelevant.

[2]    The Stock Photography License contains a provision that "any dispute regarding this license" shall, at Mr. Boatman's discretion, be either subject to arbitration or be "adjudicated in

Mr. Boatman alleges that beginning in 2009, the Defendant used his photographs in ways that were not authorized by any of the licenses he issued, and therefore the uses infringed upon his exclusive copyrights in the photos.  Specifically, Mr. Boatman alleges that the Defendant used his photographs without authorization in the following six ways:

1. Reproducing eight photographs from the 2010 U.S. Open on the Defendant's website in a "free electronic preview" of the Fall 2010 edition of Racquetball Magazine;

2. Reproducing his photograph of racquetball player Kane Waselenchuk,, taken at the 2010 U.S. Open, in the Defendant's 2011 Regional Qualifiers flier;

3. Creating a derivative work of his photograph of racquetball player Alvaro Beltran, taken at the 2010 U.S. Open, by reproducing it in a slightly blurred form on the cover of the Defendant's 2011 Rulebook;

4. Creating a derivative work of one photograph from the 2010 U.S. Open and reproducing the photograph in a slightly blurred form in a flyer for the Defendant's Instructor Program, which was included in the Winter 2011 edition of Racquetball Magazine;

5. Reproducing a series of his photographs in a packet advertising sponsorship opportunities for one of the Defendant's tournaments in 2011;

6. Providing copies of five photographs from the 2009 U.S. Open to a third-party, the United States Racquetball Foundation, which photographs then appeared on the third-party's website and in a live presentation by one of its representatives.[3]

---

Illinois."  Neither party has requested transfer of this case or otherwise questioned the Court's jurisdiction to consider it, and thus, the Court treats this particular provision as having been waived by both parties.

[3]      In his motion, Mr. Boatman appears to allege two additional infringing uses that occurred after the filing of the Complaint in this case: (1) the sale of a photograph on the Defendant's website, and the distribution of a sponsorship packet to third-party, ESPN, Inc.  These allegations are not part of the Complaint, and no amendment to the Complaint has been made to include

Mr. Boatman further alleges that two of the photographs that he provided to the Defendant from the 2010 U.S. Open contained his copyright watermark, and that the Defendant reproduced those two photographs without the copyright watermark.

For these alleged acts, Mr. Boatman brings two claims: (1) copyright infringement under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*, and (2) violation of the Digital Millennium Copyright Act (DMCA), 17 U.S.C. §§ 1201 *et seq.* Mr. Boatman also asserts that he is entitled to enhanced statutory damages under 17 U.S.C. § 504(c)(2) due to the Defendant's alleged willful infringement of his copyrights. Both parties move for summary judgment in their favor.

## II.  Summary Judgment Standard

Although Rule 56 of the Federal Rules of Civil Procedure was recently restyled, its purpose remains the same — to provide for a summary determination when no trial is necessary. *See White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Accordingly, Rule 56(a) directs entry of a judgment on a claim or defense, or part thereof, when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law.

Substantive law governs which facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof, and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" if the evidence presented in support of and in opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a

---

them. Accordingly, these allegations of infringement are outside the scope of this lawsuit and are not addressed in this opinion.

court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c). Once the moving party has met its burden, to establish a genuine dispute that requires a trial, the responding party must present competent and contradictory evidence as to a material fact. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999).

When the moving party does not have the burden of proof on the pertinent issue, it may point to an absence of sufficient evidence to establish a claim or defense that the non-movant is obligated to prove. Once the movant has done so, the respondent must come forward with sufficient competent evidence to establish a *prima facie* claim or defense to justify a trial. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

This case involves cross-motions for summary judgment. "Because the determination of whether there is a genuine dispute as to a material factual issue turns upon who has the burden of proof, the standard of proof and whether adequate evidence has been submitted to support a *prima facie* case or to establish a genuine dispute as to material fact, cross motions must be evaluated independently." *In re Ribozyme Pharmaceuticals, Inc., Securities Litig.*, 209 F. Supp. 2d 1106, 1112 (D. Colo. 2002); *see also Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000); *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) ("Cross-motions for summary judgment are to be treated separately; the denial of one

does not require the grant of another.").

## III.  Analysis

### A.  Plaintiff's Motion

Mr. Boatman states that he seeks summary judgment on his claims of copyright infringement and violations of the DCMA.  He also seeks a determination as to the willfulness of the Defendant's conduct for purposes of enhanced statutory damages.

### 1.  Copyright Infringement

Although it is not clear from the pleadings, Mr. Boatman's allegations of infringement actually raise two kinds of claims:  direct copyright infringement and indirect copyright infringement.

#### a. Direct Infringement

The Copyright Act of 1976 provides that "the owner of copyright under this title has the exclusive rights to do and to authorize any of the following: (1) to reproduce the copyrighted work in copies . . . ; (2) to prepare derivative works based upon the copyrighted work; [and] (3) to distribute copies . . . of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending; . . . ."  17 U.S.C. § 106.  Anyone who violates any of the exclusive rights of the copyright owner -- that is, "anyone who trespasses into his exclusive domain by using or authorizing the use of the copyrighted work in one of the [] ways set forth in the statute" -- infringes the copyright."  *Sony Corp. of Am. V. Universal City Studios, Inc.*, 464 U.S. 417, 433 (1984) (citing 17 U.S.C. § 501(a)).

To prevail on a claim of copyright infringement, a plaintiff must establish (1) ownership of a valid copyright, and (2) the defendant's violation of any one of the exclusive rights granted to copyright owners under 17 U.S.C. § 106.  *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9

F.3d 823, 831-32 (10th Cir. 1993).  The Defendant does not dispute that Mr. Boatman owns the copyright in the photographs at issue.  Thus, the issue is whether the Defendant's conduct violated any of Mr. Boatman's exclusive rights under the Copyright Act.

The Defendant does not dispute that it reproduced Mr. Boatman's photographs in the ways discussed above.  Instead, it argues that each use was permitted by one or more of the three licenses granted by Mr. Boatman.  Generally, a copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement and can sue only for breach of contract.  *Jacobsen v. Katzer*, 535 F.3d 1373, 1380 (Fed. Cir. 2008).  If, however, a license is limited in scope and the licensee acts outside the scope, the licensor can bring an action for copyright infringement.  *Id.*  A licensee violates the scope of a copyright license by exceeding the specific purpose for which the license was granted. *ITOFCA, Inc. v. MegaTrans Logistics, Inc.*, 322 F.3d 928, 940 (7th Cir. 2003).

The existence of a license authorizing the use of copyrighted material is an affirmative defense to an allegation of infringement.  *Chamberlain Group, Inc. v. Skylink Technologies, Inc.*, 381 F.3d 1178, 1193 (Fed. Cir. 2004) (citing *I.a.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996)); *Baisden v. I'm Ready Productions, Inc.*, 693 F.3d 491, 499 (5th Cir. 2012); *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1235 (11th Cir. 2010).   However, the defendant only bears the burden of proving the *existence* of a license granted to it; the plaintiff bears the burden of proving that the defendant's use of a copyrighted work exceeded the scope of that license. *Bourne v. Walt Disney Co.*, 68 F.3d 621, 630 (2d Cir. 1995).

Mr. Boatman does not dispute the existence of any of these licenses.  Instead, he argues that the Defendant's conduct falls outside the scope of the licenses.  Thus, in order to prevail on

his claims of infringement, he must prove that none of the licenses granted the Defendant permission for the asserted uses.

Mr. Boatman asserts that each of the licenses limited the Defendant's use of his photographs to "editorial use." None of the agreements of licenses offers an express definition of the term "editorial use." At best, the USAR License appears to juxtapose the concept of permissible "editorial use" with the prohibition on the use of the photos in "commercial advertisement or for ads of any type." The parties have submitted deposition transcripts from various witnesses discussing the definition of the term "editorial use," but the record does not reveal that the parties ever agreed upon a clear and precise definition of that term.

James Heiser, USAR's principal, gave somewhat inconsistent testimony on his understanding of the term. He testified that prior to November 8, 2010, he did not have any particular understanding of the term "editorial" rights as used in the licenses and agreements. In a November 8, 2010 e-mail to Mr. Ganim, he posed the question of "what are editorial rights," and continued "that to me does not imply the right to use the photographs in any way other than the Open." He testified that, today, based on having "general conversations" with unspecified individuals, he understands the term "editorial use" to mean "written information that is not for profit, including a non-profit publication." He later explained that "editorial, to me, means usage of – beyond usage for your own use; giving it to somebody for commercial purposes that will make them money."

Mr. Boatman also submitted his own affidavit and excerpts from his own deposition testimony, but neither document discusses his understanding of the term "editorial use."

In response to Mr. Boatman's motion, USAR submitted a portion of Mr. Ganim's deposition testimony. Mr. Ganim stated that his understanding of the US Open Agreement was

that "the photographs were licensed to me for the purpose of anything I wanted to do with them with regards to the US Open, so editorial purposes, marketing and promotion of the US Open , dissemination and use of the US Open photos by my US Open sponsors. . . . that I could use the photographs for, you know, whatever I needed to as long as it related to the US Open."  He testified that he discussed this issue with Mr. Boatman on occasion, and that Mr. Boatman "said he didn't want the photographs, you know, to be profited from, that we were only interested in promoting racquetball with the photographs."  On other occasions, Mr. Ganim also seemed to juxtapose the notion of "editorial use" with "commercial use": "I did not distribute the photos to [USAR] for commercial use.  I distributed them to them for editorial use."

Enforcing a copyright license "raises issues that lie at the intersection of copyright and contract law."  *MDY Industries, LLC v. Blizzard Entertainment, Inc.*, 629 F.3d 928, 939 (9th Cir. 2010) (citation omitted).  The scope or purpose of a copyright license is determined through application of normal principles of contract law.  *Kennedy v. Nat'l Juvenile Det. Ass'n,* 187 F.3d 690, 694 (7th Cir. 1999) (citing 3 Nimmer, Nimmer on Copyright § 10.08)).  The parties have not expressly addressed what state's law governs the terms of the various licensing agreement, and in the absence of a clear argument as to that point, the Court will apply the typical rules of contract interpretation applied in Colorado.  The Court must attempt to give effect to the parties' mutual agreement as to a particular term.  Absent a clear indication that the parties intended an idiosyncratic meaning, the Court first assumes that the parties intended their terms to bear their ordinary and common meanings.  If there is no plain meaning to a given term, the Court then looks to other extrinsic evidence of the parties' intend such as details of the parties' negotiations or their course of dealings.  *See Level 3 Communications Corp. v. Liebert Corp.*, 535 F.3d 1146, 1154 (10th Cir. 2008).

10

Here, the term "editorial," or "editorial use," has no plain and common meaning that is dispositive in the context presented here.  Dictionary definitions of "editorial" merely provide that the term is "of or relating to an editor or editing," and the act of "editing" (as relevant here) is defined as "to prepare [material] for publication."  Merriam-Webster Collegiate Dictionary, 10th Ed. (2001).  This definition merely provides that any use by USAR of the photographs for publication purposes could be considered "editorial use."

Without a definition derived from plain language, the Court is left to attempt to divine the parties' mutual intention from other sources, but it is here that the record becomes sufficiently ambiguous as to prevent the granting of summary judgment in Mr. Boatman's favor.  There is some evidence to suggest that the parties understood "editorial use" to be the antithesis of "commercial" or "advertising" use – *i.e.* that USAR was permitted to make use of the photographs in conjunction with articles about the US Open in particular, or even about racquetball in general, but was not entitled to use the photographs to promote the sale of any products.

But even that interpretation does not clearly resolve the issue: the concept of "commercial" use is itself ambiguous.  Mr. Ganim's recitation of discussions with Mr. Boatman suggest that the parties may have understood that "commercial" use equated with "for profit" use – that is, the photographs could be used to advertise products and services provided by USAR or other non-profit entities seeking to advance the statute of racquetball, but that the photographs could not be used by for-profit entities seeking to advertise their products or services.  If, by extension, "editorial" use is the opposite of "for-profit" use, then all of USAR's uses of the photos might be considered "editorial" in nature because USAR is a non-profit company and

there is nothing in the record to suggest that its own use of the products was ever for a profit-generating purpose.

Ultimately, then, the Court cannot grant Mr. Boatman's motion for summary judgment on his claims of direct infringement because there is a genuine dispute of triable fact as to whether USAR's use of the photographs was consistent with the terms of one or more of the licenses or agreements' grant of permission for USAR to make "editorial" use of them.

### b. *Contributory Infringement*

Although the Copyright Act does not expressly cover contributory infringement, this doctrine of secondary liability is well established in the law and is grounded in common law principles of secondary liability. *See Metro-Goldwyn-MayerStudios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005). Contributory liability attaches when the defendant intentionally induced or encouraged direct infringement by another. *Id.*

To establish contributory infringement, a plaintiff must prove: (1) direct copyright infringement by a third-party; (2) knowledge by the defendant of the direct infringement; and (3) that the defendant intentionally induced, caused, or materially contributed the infringement. *See Diversey v. Schmidly*, 738 F.3d 1196, 1204 (2013). One way of establishing contributory liability is by showing a defendant "authorized the infringing use." *Id.*

Mr. Boatman has submitted evidence tending to show that the Defendant distributed five of his photographs to a third-party (the United States Racquetball Foundation) who then used the photographs on its website and in a live presentation. Assuming (without necessarily finding) that such uses by the third-party are infringing, the Court nevertheless finds that summary judgment for Mr. Boatman on his claim of contributory infringement is not appropriate. Mr.

Boatman has not come forward with evidence to establish that the Defendant induced or encouraged – much less that it even knew of – the third party's infringing use of the photos.

    *c. Enhanced Statutory Damages*

    Mr. Boatman seeks a determination that he is entitled to enhanced statutory damages for willful infringement under 17 U.S.C. § 504(c)(2).   However, because there are disputed issues of fact regarding liability for infringement, the Court does not reach the issue of willfulness.   At trial, if the jury finds that the Defendant is liable for copyright infringement, it will be asked to further determine whether the Defendant acted willfully.

## 2.  Violations of the Digital Millennium Copyright Act

The DCMA states, in relevant part:

> No person shall, without the authority of the copyright owner or law —
>
> (1) intentionally remove or alter any copyright management information, [4]
>
> (2) distribute or import for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, or
>
> (3) distribute, import for distribution, or publicly perform works [or] copies of works . . . knowing that copyright management information has been removed or altered without authority of the copyright owner or the law,
>
> knowing, knowing, or . . . having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

17 U.S.C. § 1202(b).

    Mr. Boatman asserts that two of the 2010 U.S. Open photographs that he licensed to the Defendant included his copyright watermarks on the photographs, and that the Defendant intentionally removed his copyright information from the photographs.   To prove a claim under §

---

[4]    17 U.S.C. § 1202(c)(3) defines "copyright management information" to include "the name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright."   The Court will assume that the copyright notice included on the five photographs constitutes "copyright management information."

1202(b)(1), Mr. Boatman must prove that the Defendant, (i) without authority of Mr. Boatman, (ii) intentionally removed or altered any copyright management information (iii) knowing or having reasonable grounds to know that it would induce, enable, facilitate, or conceal an infringement of the federal copyright laws. *See Gordon v. Nextel Communs. & Mullen Advertising, Inc.,* 345 F.3d 922, 927 (6th Cir.2003).

The Defendant disputes that the copyright information was included on Mr. Boatman's photographs when he sent them.  It points to evidence that Mr. Boatman himself was unsure whether the photographs he submitted had his watermarks on them, and that he supplied watermark and copyright information in a separate file "to be added after your designers crop" the images. This implies that the Defendant could not have removed or altered the information from the photographs themselves.  The Defendant further disputes that it intentionally removed or altered any copyright information contained on the photographs.  The record reflects that an independent contractor is in charge of selecting photographs for the Defendant, and thus the Defendant argues that any removal or alteration cannot be imputed to it.  Because there are disputed issues of material fact with regard to the removal of Mr. Boatman's copyright information and whether the Defendant knew of such removal, the Court finds that summary judgment on Mr. Boatman's claim for violations of the DCMA is not warranted.

### B. Defendant's Motion for Summary Judgment

The Court now turns to the Defendant's Motion for Summary Judgment.  The Defendant moves for summary judgment in its favor on all of Mr. Boatman's claims.

### 1. Copyright Infringement

As noted above, to prevail on a claim of copyright infringement, Mr. Boatman must establish: (1) ownership of a valid copyright, and (2) the Defendant's violation of any one of the

exclusive rights granted to copyright owners under 17 U.S.C. § 106.  *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 831-32 (10th Cir. 1993).  Further, Mr. Boatman must prove that the Defendant's conduct exceeded the scope of the licenses at issue.  *Bourne*, 68 F.3d at 631.

USAR contends[5] that, to the extent it infringed Mr. Boatman's copyright, it did so as an "innocent infringement," such that it is not liable if it can "prove that it was not aware of and had no reason to believe that its acts constituted copyright infringement."  The Court understands this argument to be the mirror image of Mr. Boatman's argument that USAR's infringement was willful, such that USAR is liable for enhanced damages under 17 U.S.C. § 504(c)(2), not an argument that USAR is entitled to summary judgment on the substantive direct infringement claim.  USAR cites *Denenberg v. LED Techs., LLC*, 2012 WL 4478970 (D. Colo. Sept. 28, 2012) (slip op.), which mentions the concept of "innocent infringement" in the context of discussing the damages: it explains that "if the infringement was innocent, meaning the infringer was not aware of and had no reason to believe that his or her acts constituted an infringement of copyright, the court may reduce the award [of statutory damages] t not less than $ 200 per infringement."  Having reviewed USAR's argument on this point, the Court finds that there are genuine disputes of fact as to the extent to which USAR knew or should have known that it was making use of Mr. Boatman's copyrighted images, and doing so in a way that exceeded the scope of any license granted by Mr. Boatman.  Although USAR disputes the effectiveness of the document, the 2010 USAR Agreement could be construed to put USAR on notice of both Mr. Boatman's claim of copyright in various images and his insistence that they not be used for

---

[5]       On several occasions, USAR's motion identifies certain "elements that cannot be proven by the Plaintiff," but offers no material argument or evidence in support of the contention that Mr. Boatman cannot establish them.  The Court ignores such unsupported contentions and adjudicates only those matters for which USAR has offered a meaningful argument.  *See* Fed. R. Civ. P. 56(c)(1)(a), (b) (party asserting that a fact cannot be genuinely disputed "must support that assertion" with citations to the supporting evidence).

commercial purposes.  The record reflects that USAR thereafter made use of some of the images in a context that, depending on the definition of the term, could be said to be "commercial" in nature.  Accordingly, the Court finds that the question of USAR's knowledge and intent when undertaking any infringing act is a question that must be resolved at trial.

Moreover, for the reasons discussed above, there is a genuine dispute of fact as to whether USAR's use of the photographs exceeded the scope of the licenses granted by Mr. Boatman.  Among other things, depending on how the term "editorial" is construed in the various licenses, USAR's use of the photographs to solicit subscribers to its magazine or its training programs could arguably be understood to exceed the scope of that license.

The Court therefore finds that there are genuine disputes of fact regarding whether the Defendant's conduct fell outside the scope of all the licenses.  Thus, summary judgment in the Defendant's favor on Mr. Boatman's direct infringement claims is denied.

## 2.  Violations of the Digital Millennium Copyright Act

As noted above, a violation of § 1202(b)(1) of the DCMA requires proof that the Defendant, (i) without authority of Mr. Boatman, (ii) intentionally removed or altered any copyright management information (iii) knowing or having reasonable grounds to know that it would induce, enable, facilitate, or conceal an infringement of the federal copyright laws.  *See Gordon v. Nextel Communs. & Mullen Advertising, Inc.,* 345 F.3d 922, 927 (6th Cir.2003).

The Defendant contends that Mr. Boatman cannot establish that it intentionally removed or altered any copyright management information, or that it knew or had reasonable grounds to know that any removal or alteration of copyright management information would induce, enable, facilitate or conceal an infringement of the federal copyright laws.

Mr. Boatman responds that the two images at issue were produced to the Defendant with his copyright watermark.  When the photographs were reproduced in the Defendant's materials, the watermarks had been removed either by cropping or blurring out.  Thus, it is reasonable to infer that the Defendant edited the photographs in a manner that effectively removed or altered Mr. Boatman's copyright information.  Further, Mr. Boatman asserts that pursuant to the USAR Agreement, the Defendant was on notice that failure to display his copyright information on each published image would result in violation of his copyrights.  The USAR Agreement provides that "[c]opyright notice must be clearly viewable in each image published."  The evidence shows that the agreement was provided to the Defendant, along with a text file so that the Defendant could be sure to add the copyright watermark to any photograph after editing took place.  Thus, it could be inferred that the Defendant was aware that removal, or failure to display, the copyright information would lead to an infringement of Mr. Boatman's copyrights.  The Court therefore finds that Mr. Boatman has sustained his burden of establishing a genuine dispute of material fact as to his DCMA claim, and summary judgment in the Defendant's favor on these claims is inappropriate.

### 3.  Waiver Defense

The Defendant argues that Mr. Boatman has "waived" his right to claims of copyright infringement and violations of the DCMA.  To prove a waiver defense, a defendant is required to show, (1) that the copyright owner had knowledge of an existing right, and (2) an intentional relinquishment of that right by the copyright owner.  *A&M Records v. Napster*, 239 F.3d 1004, 1026 (9th Cir. 2001).

The Defendant asserts that Mr. Boatman waived his rights to claims of copyright infringement by providing photographs from the 2008 and 2009 U.S. Open to the Defendant and

permitting the Defendant to use the photographs for certain purposes.  It further asserts that Mr.

Boatman waived his claims to violations of the DCMA because in 2009 he approved the

Defendant's use of his photographs without copyright information displayed on each photo.

However, none of the evidence produced by the Defendant applies to Mr. Boatman's rights with

regard to his 2010 U.S. Open photographs.  The evidence therefore does not establish that Mr.

Boatman abandoned any of his rights as to the 2010 U.S. Open photographs.  Rather, the

evidence indicates that Mr. Boatman always intended to maintain his rights to reproduction,

distribution, and display of his works.  Accordingly, summary judgment on the Defendant's

affirmative defense of waiver is inappropriate.

### C.  Defendant's Motion to Restrict Access

The Defendant seeks to restrict access to its Response **(#31)** to Mr. Boatman's motion for

summary judgment, and its Reply **(#33)** in support of its own motion for summary judgment.[6]

The Defendant asserts that both briefs rely upon an email correspondence between Mr. Boatman

and non-party Michael Augustin, which has been designated as "highly confidential" and

privileged by Mr. Boatman's counsel, and on Mr. Boatman's testimony regarding the email.  The

Defendant filed redacted briefs and the email correspondence under Level 1 restriction.  It

requests that the documents remain restricted until the parties can address whether the

information is privileged.

The Supreme Court acknowledged a common law right of access to judicial records in

*Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978).  This right is premised upon

the recognition that public monitoring of the courts fosters important values such as respect for

---

[6]     Although not mentioned in this motion, USAR's motion for summary judgment was also
publicly-filed in a redacted form, with an unredacted version filed under a Level 1 restriction.  At
no time has USAR moved for leave to have that restricted access maintained as to the unredacted
motion.  For the same reasons set forth herein, the Court finds no good cause to restrict public
access to the unredacted version, and directs that restrictions on Docket # 28 be lifted.

the legal system.  *See In re Providence Journal Co.*, 293 F.3d 1, 9 (1st Cir. 2002).  Judges have a responsibility to avoid secrecy in court proceedings because "secret court proceedings are anathema to a free society."  *M.M. v. Zavaras*, 939 F. Supp. 799, 801 (D. Colo. 1996).  There is a presumption that documents essential to the judicial process are to be available to the public, but they may be sealed when the public's right of access is outweighed by interests which favor nondisclosure.  *See United States v. McVeigh,* 119 F.3d 806, 811 (10th Cir. 1997).

D.C. Colo. L. Civ. R. 7.2(b) requires a party seeking restricted access to demonstrate, among other things, identify "the [private] interest to be protected" by the restriction and "a clearly defined and serious injury that would result if access is not restricted."  Furthermore, that rule provides that "stipulations between the parties or stipulated protective orders with regard to discovery" are, of themselves, insufficient to warrant restricted access.

Here, USAR cites only to Mr. Boatman's designation of the e-mail as "confidential" during discovery as the private interest to be protected, and USAR candidly opines that it disagrees with that designation.  It does not identify any injury that Mr. Boatman might suffer if the nature and contents of that e-mail are revealed via public filings and, more importantly, Mr. Boatman has not responded to the motion to assert such an interest.  In the absence of any colorable justification for restricting public access to USAR's unredacted filings, the motion to restrict access is denied.  Thus, the restrictions shall be lifted as to Docket #s 28, 31, and 33.

## IV.  Conclusion

For the forgoing reasons, the Plaintiff's Motion for Summary Judgment **(#26)** is **DENIED**; the Defendant's Motion for Summary Judgment **(#27)** is **DENIED**; and the Defendant's Motion for Leave to Restrict Document **(#35)** is **DENIED**.  The Clerk of Court shall lift the current restrictions on Docket #s 28, 31, and 33.

The parties shall begin preparation of a Proposed Pretrial Order pursuant to the previously-issued Trial Preparation Order (#20) and shall jointly contact chambers with 7 days to promptly schedule a Pretrial Conference.

Dated this 31st day of March, 2014.

**BY THE COURT:**

Marcia S. Krieger
Chief United States District Judge